UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNIFER DIBBERN,

        Plaintiff,

                                      CASE NO. 2:12-CV-15632
                                       JUDGE SEAN F. COX
                                       MAGISTRATE JUDGE PAUL J. KOMIVES

  v.

UNIVERSITY OF MICHIGAN, et al.,

        Defendants.

_____/

## ORDER GRANTING IN PART DEFENDANTS' JUNE 9, 2014 MOTION TO COMPEL PRIVILEGE LOG DOCUMENTS (Doc. Ent. 48)

**A.**    **Background**

Plaintiff filed this case on December 21, 2012.  Doc. Ent. 1.  On January 25, 2013, she filed an amended complaint.  Doc. Ent. 8.

On June 7, 2013, plaintiff filed a second amended complaint against the University of Michigan (including the Board of Regents and President Mary Sue Coleman), Rachel S. Goldman, Tresa Pollock and Peter Green.  Doc. Ent. 23 ¶¶ 9-12; *see also* Doc. Ent. 23 ¶¶ 126, 163 & 173.  The causes of action include:

(I)      Title IX, Sex Discrimination and Sexually Hostile Educational
        Environment (Against the University and Board of Regents);

(II)    Title IX: Retaliation for Reporting, Opposing, and Attempting to Remedy
        a Sexually Hostile Environment In the College of Engineering (Against
        the University and Board of Regents)

(III)   Equal Protection: 42 U.S.C. § 1983 (Against the Individual Defendants in
        their individual capacity and against Individual Defendants in their official
        capacity pursuant to *Ex Parte Young only*)

(IV)   Due Process Violations: 42 USC 1983 (Against All Defendants)

(V)     First Amendment Freedom of Speech Retaliation: 42 USC 1983 (Against
the Individual Defendants in their individual capacity and against
Individual Defendants in their official capacity pursuant to *Ex Parte
Young only*)

(VI)    Michigan State Law Elliott-Larson Civil Rights Act:  Sex
Discrimination/Disparate Treatment/Hostile Environment (Against All
Defendants)

(VII)   ELCRA Sex Discrimination/Disparate Impact – (Against All Defendants)

(VIII)  ELCRA Retaliation (Against All Defendants)

(IX)    Invasion of Privacy (Against the Individual Defendants)

Doc. Ent. 23 ¶¶ 123-189.

Defendants filed an answer on December 16, 2013.  Doc. Ent. 40.  On February 18, 2014,

Judge Cox entered a stipulated protective order.  Doc. Ent. 43.

**B.      Pending Motion**

**1.**      On January 8, 2014, the University of Michigan served its first set of interrogatories and

document requests.  Doc. Ent. 48-12.  On February 14, 2014, plaintiff served responses.  Doc.

Ent. 48-13.

On February 24, 2014, plaintiff submitted a privilege log listing eleven (11) items.  *See*

Doc. Ent. 48-15.

**2.**      On February 20, 2014, the University of Michigan served AFT Michigan with a

subpoena for production of documents.  Doc. Ent. 48-17.  On February 24, 2014, the University

of Michigan served Graduate Employees' Organization at the University of Michigan with a

subpoena for production of documents.  Doc. Ent. 48-18.

AFT and GEO submitted privilege logs.  *See* Doc. Ent. 48-20.

**3.**      Currently before the Court is defendants' June 9, 2014 motion to compel privilege log

documents.  Doc. Ent. 48.  By this motion, defendants seek to compel plaintiff, non-party AFT

Michigan and non-party Graduate Employees Organization "to produce non-privileged documents withheld from production but which were identified on their respective privilege logs." Doc. Ent. 48 at 2.  Specifically, defendants seek entry of an order requiring the following production:

> (1)    All documents identified on Plaintiff's privilege log [Doc. Ent. 48-15] (except Dibbern 5566 to 68, which was produced on June 6); and
>
> (2)    All documents identified on the three union privilege logs [Doc. Ent. 48-20 (Exhibit 19)], except to the extent these documents include union financial records and grievances related to union members other than Plaintiff.

Doc. Ent. 48 at 4.[1]

A response was due on July 7, 2014.  Doc. Ent. 55.  On July 3, 2014, AFT Michigan and GEO filed a response.  Doc. Entries 60 & 61.  On July 7, 2014, plaintiff filed a response.  Doc. Ent. 63.

On July 14, 2014, defendants filed a reply.  Doc. Ent. 64.  Defendants filed supplemental exhibits on July 16, 2014.  Doc. Ent. 65.  These exhibits include (1) redacted emails produced at Karla Dibbern's July 14, 2014 deposition (Doc. Ent. 65-2) and (2) unredacted questions from Karla Dibbern (Doc. Ent. 65-3).  *See* Doc. Ent. 65-1.

On July 29, 2014, the parties filed a joint statement of resolved/unresolved issues.  Doc. Ent. 69.  As to the motion to compel privilege log documents (Doc. Ent. 48), defendants seek:

> 1.    Unredacted copies of the documents listed on plaintiff's privilege log (Doc. Ent. 48-15), with the exception of the June 18, 2013 letter

---

[1]Exhibit 6 of this motion - plaintiff's redacted "confidential" emails - (*see* Doc. Ent. 48-7) was filed under seal (*see* Doc. Ent. 49).  The June 9, 2014 motion to seal (Doc. Ent. 50) was granted by the Court on July 22, 2014.
    Exhibit 7 of this motion (*see* Doc. Ent. 48-8) consists of plaintiff's other redacted emails.

      2.      Unredacted copies of the documents listed in the AFT/GEO privilege logs
             (Doc. Ent. 48-20)

Doc. Ent. 69 at 2-3.

**C.**      **Discussion**

**1.**      Judge Cox referred this motion to me for hearing and determination.  Doc. Ent. 52.  A hearing was originally noticed for August 1, 2014.  Doc. Entries 66, 67 & 68.  It was renoticed for September 11, 2014 and again renoticed for September 15, 2014.  Doc. Entries 70 & 73.

On the date set for hearing, attorneys Megan P. Norris, David M. Blanchard and Mark H. Cousens appeared.  At the conclusion of oral argument, I took defendants' June 9, 2014 motion (Doc. Ent. 48) under advisement.

**2.**      **Plaintiff's ten (10) pages of documents should be produced without redaction.**
Defendants argue that "the Court should order the production of the documents withheld by plaintiff on the basis of the attorney-client privilege[.]"  Doc. Ent. 48 at 19-21.

In response, plaintiff claims to have only withheld in full one (1) document titled, "Union Minutes."  Doc. Ent. 63 at 4.  Also, she claims to have produced nine (9) "lightly-redacted version of a series of documents where the only part redacted are specific legal advice given by or requested of Mark Cousens, counsel for the AFT/GEO."  Doc. Ent. 63 at 5.

Defendants reply that "the attorney-client privilege does not apply to any of the disputed documents[.]"  Doc. Ent. 64 at 4-8.

By a letter dated September 15, 2014, counsel for plaintiff supplied the Court with "un-redacted versions of the documents in Plaintiff's possession that Defendants have requested to be produced without redactions."  This submission for in camera review contains unredacted copies of ten (10) of the eleven (11) items listed in plaintiff's February 24, 2014 privilege log (Doc. Ent.

48-15).

Having reviewed the parties' arguments, I conclude that plaintiff's ten (10) pages of documents should be produced without redaction. As to the one (1) page of union minutes (Dibbern001925), regarding which plaintiff asserted privilege to the entire document (Doc. Ent. 48-16), plaintiff offers that it "details the specific, union-strategy that was occurring at a particular meeting, and for the reasons discussed in the union's briefing, should not be produced." Doc. Ent. 63 at 4. However, I agree with defendants that plaintiff does not have standing to assert the attorney-client privilege on behalf of the AFT/GEO. *See* Doc. Ent. 64 at 5; *United States v. Patej*, 95 Fed.Appx. 750, 752 (6th Cir. 2004) ("Patej [defendant] lacked standing to assert Gouda's [defendant's ex-husband's] privilege in this case because she was not the client."). This conclusion is buttressed by plaintiff's counsel's June 6, 2014 letter, which states with respect to certain inadvertent disclosures, "[i]n some cases, we believe the privilege belongs to the Union and not for Ms. Dibbern to waive." Doc. Ent. 48-16.

As to the nine (9) pages of emails, plaintiff herself states that "the only part[s] redacted are specific legal advice given by or requested of Mark Cousens, *counsel for the AFT/GEO*." Doc. Ent. 63 at 5 (emphasis added). Consistent with this representation is the point that attorney Cousens has only filed matters in this case on behalf of the unions. *See* Doc. Entries 60 & 61.

To be sure, I acknowledge plaintiff's reliance upon *Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981) ("The communications at issue were made by Upjohn employees to counsel for Upjohn acting as such, at the direction of corporate superiors in order to secure legal advice from counsel.") (internal footnote omitted) and *Arcuri v. Trum Taj Mahal Assocs.*, 154 F.R.D. 97, 112 (D.N.J. 1997) (" The deposition of Flanagan [Local 54's monitor] shall be continued to the extent

5

that it seeks to inquire into the meaning and intent of his April 6, 1992 decision, rendered

pursuant to the hearings held by him and commenced September 3, 1991, shall be granted; to the

extent that it seeks testimony relating to his communications with attorneys Simonoff and

O'Brien [Local 54's counsel], it shall be denied.").  Doc. Ent. 63 at 5-6.

However, the communications at issue mostly involve Alyssa Picard (AFT employee

tasked with supporting local unions in organizing) and/or Amber Cooper (GEO staff person),

who defendants describe as non-managerial employees.  *See* Doc. Ent. 63 at 5, Doc. Ent. 64 at 4-

5.[2]  Moreover, I am persuaded by the cases upon which defendants rely.  *See Gwin v. National*

*Marine Engineers Beneficial Ass'n*, 966 F.Supp. 4, 7-8 (D.D.C. 1997) ("It is well established, as

a matter of law, that an attorney handling a labor grievance on behalf of a union does not enter

into an 'attorney-client' relationship with the union member asserting the grievance[,]" and "an

attorney acting as an agent of the union has an obligation to act for the benefit of all its members,

even if the majority interest clashes with individual interests.") and *New Phoenix Sunrise Corp.*

*v. C.I.R.*, 408 Fed.Appx. 908, 918 (6th Cir. 2010) ("Both the attorney-client privilege and

work-product protection are waived by voluntary disclosure of private communications to third

parties.") (citation omitted).

**3.     GEO and AFT's 371 pages of documents should be produced, albeit with some**

**redaction.** Defendants argue that "the union's objections lack merit and should be rejected[.]"

Doc. Ent. 48 at 21-26.

At issue are 137 messages, which the union contends "contain commentary on the

[Graduate Student Research Assistants (GSRA)] campaign." Doc. Ent. 61 at 4.  According to

---

[2]A redaction is also present on what appears to be an electronic mail from plaintiff's
parents (Dibbern005021, Dibbern005027).

the union, "the content of the email contains information which reveals either campaign strategy, strategy related to the process of collective bargaining, decisions associated with litigation (not attorney client privileged)."  Doc. Ent. 61 at 6.

The Union responds that "compulsory disclosure of the sensitive material will burden the Union's exercise of its rights under the First Amendment."  Doc. Ent. 61 at 7.  GEO claims that it has "a substantial interest in insuring that its sensitive internal decisions remain confidential[,]" and requests that it not be compelled to disclose the 137 emails in contest.  Doc. Ent. 61 at 13.

Defendants reply that "the documents withheld by the AFT/GEO do not implicate any First Amendment associational concerns[.]"  Doc. Ent. 64 at 2-4.  Attached to defendants' reply are 118 pages of AFT/GEO Document Production Excerpts (Doc. Entries 64-3 & 64-4) and eight (8) pages of AFT/GEO heavy redactions (Doc. Ent. 64-5).

On September 15, 2014, union counsel supplied the Court with 371 pages of documents for in camera review.  This submission for in camera review appears to contain unredacted copies of items listed in AFT/GEO's privilege logs (Doc. Ent. 48-20).  For example, there are (A) 193 pages of documents, which appear to correspond with the list of items withheld on the basis of budget, organizational, campaign, internal, grievance, legal, and bargaining strategy, as well as personal and staff matters (*see* Doc. Ent. 48-20 at 1-3);[3] (B) 151 pages of documents, which appear to correspond with the list of items withheld as grievance email (*see* Doc. Ent. 48-20 at 4-5); and (C) twenty-seven (27) pages of documents, which appear to correspond with the

---

[3]These 193 pages appear to consist of 99 pages from 2011, 92 pages from 2012 and 2 pages from 2013.  However, what appears to be the corresponding privilege log lists items dated from June 15, 2011 to May 9, 2012.  Doc. Ent. 48-20 at 1-3.

list of items withheld on the basis of internal strategy, AFT strategy and bargaining strategy (*see* Doc. Ent. 48-20 at 6). *See also* Doc. Ent. 61-1.

Having reviewed the parties' arguments, I conclude that the union documents should be produced but with some redaction. Citing ¶¶ 4, 8, 32, 86, 120-21, 155-56 of plaintiff's second amended complaint (Doc. Ent. 23), defendants note that "Plaintiff claims that she was retaliated against because of her involvement in union activities." Doc. Ent. 48 at 2 ¶ 2. The Court agrees. For example, within her First Amendment freedom of speech retaliation claim (Count V), plaintiff alleges that "Retaliatory actions were motivated in all or in part by Plaintiff's speech to address and remedy systematic failures to comply with state and federal law," and "Plaintiff faced numerous forms of retaliation though out her academic experience at the University based on her reporting, opposing, and attempting to remedy Title IX violations in the College of Engineering[.]" Doc. Ent. 23 ¶¶ 155-56. Moreover, as defendants point out, "the AFT or GEO could redact names of union supporters other than Plaintiff, removing any associational privilege concerns." Doc. Ent. 48 at 23.

As the union has acknowledged, "[t]he emails may be responsive to the Defendants' request." Doc. Ent. 61 at 6. Therefore, AFT Michigan/GEO shall produce the 371 pages of documents on the basis that the information therein is discoverable under Fed. R. Civ. P. 26(b) ("Discovery Scope and Limits."). However, the union(s) may redact the names of union supporters other than plaintiff.

## D.     Order

Accordingly, defendants' June 9, 2014 motion to compel privilege log documents (Doc. Ent. 48) is GRANTED IN PART.

IT IS SO ORDERED.

The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of

fourteen (14) days from the date of receipt of a copy of this order within which to file objections

for consideration by the district judge under 28 U.S.C. § 636(b)(1).


Dated: October 3, 2014                    s/Paul J. Komives
                                          PAUL J. KOMIVES
                                          UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on October 3,
2014, electronically and/or by U.S. Mail.

                                          s/Michael Williams
                                          Case Manager for the
                                          Honorable Paul J. Komives